UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ABIGAIL S. N., <br><br>　　　　　　　Plaintiff, <br><br>　　v. <br><br>LELAND DUDEK, <br>ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br>　　　　　　　Defendant. | Case No. 3:25-cv-05011-TLF <br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

　　　　Plaintiff filed this action under 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff did not meet the criteria for disability benefits. Dkt. 5, Complaint.

　　　　On May 15, 2014, plaintiff filed an application for Social Security Disability Insurance Benefits ("SSDI") as well as an application for Supplemental Social Security Income Benefits ("SSI"). AR 243. For both applications, plaintiff alleged disability beginning January 1, 2011. *Id*. Both applications were denied initially and upon reconsideration. *Id*. Plaintiff was granted a hearing and on April 5, 2017, ALJ Kelly Wilson determined plaintiff was not disabled. *Id*. Plaintiff appealed the denial of benefits

to the appeals council ("AC") and the request for review was denied on May 16, 2018. AR 263. Plaintiff did not appeal to the United States District Court and therefore the ALJ's decision of April 5, 2017 was the final decision of the Commissioner regarding plaintiff's May 15, 2014 application.

On January 14, 2020, the plaintiff applied again for SSDI and SSI benefits, asserting more allegations and impairments. AR 531-553. Plaintiff's name has changed to Abigail S. N., but the applications were filed under the name Thomas Guest. *Id*. Both applications alleged a disability onset date of July 11, 2013. *Id*.

These claims were denied initially and upon reconsideration, and a telephone hearing was held before ALJ Lawrence Lee on October 21, 2021. AR 173-207. On January 26, 2022, ALJ Lee found plaintiff not disabled. AR 335-53. Plaintiff appealed to the AC and, on November 10, 2022, the AC vacated the prior decision and remanded the case for further administrative proceedings. AR 354-360.

Plaintiff amended the alleged onset date to November 21, 2019, thus disqualifying her from SSDI benefits (AR 32, 574), therefore the decision on plaintiff's application that has been appealed to this Court is solely for SSI benefits. AR 531-36.

On September 28, 2023, ALJ Lee conducted another hearing. AR 208-39. On December 21, 2023, ALJ Lee issued an unfavorable decision and determined plaintiff was not under a disability within the meaning of the Social Security Act in the period between November 21, 2019 to December 21, 2023. AR 31-51. Plaintiff appealed to the AC and, on November 20, 2024, the AC denied review. AR 1-7. Plaintiff now seeks judicial review of the ALJ's December 21, 2023 decision. Dkt. 5.

ALJ Lee determined that Plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"); major depressive disorder, generalized anxiety disorder; gender dysphoria; enteritis gastroparesis; somatic symptom disorder; and gastroesophageal reflux disease ("GERD"). AR 35. The ALJ found plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) with the following additional restrictions:

> Climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally … can work at unprotected heights occasionally, and moving mechanical parts occasionally . . . is able to tolerate few changes in a routine work setting defined as predictable and infrequent changes.

AR 38. The ALJ also found that plaintiff is limited to jobs with no production pace and could perform the requirements of representative occupations such as: marker (light, unskilled, SVP 2) DOT 209.587-034, advertising material distributor (light, unskilled, SVP 2) DOT 230.687-010, and collateral operator (light, unskilled, SVP 2) 208.685-010. *Id.*, AR 50-51.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security disability benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified

by the ALJ are considered in the scope of the Court's review. *Id.*

## DISCUSSION

**1. Whether the ALJ harmfully erred by discounting the opinions of two clinical psychologists, Dr. Wheeler and Dr. Morgan.**

An ALJ must consider every medical opinion in the record and evaluate each opinion's persuasiveness, with the two most important factors being "supportability" and "consistency." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 404.1520c(a). Supportability concerns how a medical source supports a medical opinion with relevant evidence, while consistency concerns how a medical opinion is consistent with other evidence from medical and nonmedical sources. *See id.*; 20 C.F.R. § 404.1520c(c)(1), (c)(2). Under the 2017 regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. The ALJ is responsible for resolving conflicts in the medical opinion evidence. *Ford v. Saul,* 950 F.3d 1141, 1149 (9th Cir. 2020). The ALJ is not required to take every opinion of medical professionals at "face value". *Ford v. Kijakazi,* 32 F.4th 785, 789 (9th Cir. 2022).

If the evidence can be interpreted in more than one rational way, the Court is required to uphold the ALJ's rational interpretation. *Stiffler v. O'Malley,* 102 F.4th 1102, 1106 (9th Cir. 2024); *Ford v. Saul,* at 1154.

Plaintiff contends the ALJ applied an inaccurate standard in evaluating the opinions of consulting examiners Dr. Kimberley Wheeler, Ph.D. and Dr. David Morgan, Ph.D. when he stated "DSHS also has a differently defined severity rating than this

agency" ... Dkt. 10, at 6; AR 47. Plaintiff points to the ALJ's statement, "The overall evidence is not consistent with impairments that limit all work activity," and argues this statement would be at odds with the step five definition of disability, "the inability to engage in work existing in significant numbers in the national economy". *Id*. at 5; AR 44.

Contrary to the reasoning of the ALJ, the Washington DSHS definition aligns with the SSA:

> "Disabled means the inability to engage in any substantial gainful activity (SGA) by reason of any medical determinable physical or mental impairment(s) which has lasted or can be expected to last for a continuous period of not less than 12 months with available treatment or result in death."

Washington Administrative Code (WAC) 388-001(c).

Here, the ALJ's reference to a definition -- which the ALJ considered as a DSHS departure from the federal definition of disability -- in analyzing the medical opinions of Dr. Wheeler and Dr. Morgan was error.

The ALJ also mentions the severity ratings used by Washington DSHS. AR 47-48. Because the ALJ does not specifically discuss how a severity rating under Washington DSHS regulations as used by Dr. Wheeler or Dr. Morgan would affect the reliability of these psychologists' assessments of plaintiff, the Court is not in a position to meaningfully review this aspect of the ALJ's decision. *Brown-Hunter v. Colvin,* 806 F.3d 487, 492-493 (9th Cir. 2015); *see* WAC 388-449-0020, "How does the department evaluate functional capacity for mental health impairments?", WAC 388-449-0035, "How does the department assign severity ratings to my impairment?", WAC 388-449-0040, "How does the department determine the severity of mental impairments?", and WAC 388-449-0050, "How does the department determine the severity of multiple impairments?". The ALJ refers to a difference, but there is no reasoning about the

precise nature of any differences between rating systems for psychological impairments and how this would cause the ALJ to determine the experts' opinions were unreliable.

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id.; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-23 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

The ALJ discounted the opinions as having been problematic for the erroneous reason that the medical opinions were given in the context of an incorrect definition of "disability" and based on an ambiguous reference to severity ratings; this error potentially could impact the ALJ's analysis of the plaintiff's RFC and impact the hypothetical posed to the vocational expert ("V.E."). The ALJ posed his hypothetical to the V.E. and made his decision about what limitations should be included in the RFC after he found Dr. Wheeler's and Dr. Morgan's assessments to be unreliable based on this mysterious reasoning. The Agency is required to "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin,* 806 F.3d at 492.

The ALJ also relied on plaintiff's spotty record of pursuing mental health treatment and noted that the treatment she did receive for anxiety and depression was conservative. AR 47, 1361. The ALJ noted that plaintiff pursued mental health treatment relating to gender reassignment surgeries. *Id*. But the ALJ determined that, for other

allegedly disabling mental health conditions such as anxiety, depression, and somatic symptom disorder, plaintiff received only conservative treatment, and medications were effective at managing symptoms. AR 44, 47. The ALJ also relied on mental health progress notes showing that plaintiff's symptoms were relatively mild. *See* AR 44-49. As the defendant argues in their responding brief, the longitudinal evidence shows that plaintiff's symptoms improved with medication and therapy. Dkt. 12, at 9-11; *see* AR 1032-1035, 1092, 1100, 1408-1414, 1454, 1739, 1744. This is a legally and factually supported reason for the ALJ's decision discounting Dr. Wheeler's and Dr. Morgan's opinions – these clinical psychologists' opinions were inconsistent with other medical evidence showing improvement with therapy and medication and did not take into account that plaintiff's mental health therapy was off-and-on, and fairly conservative. If the evidence can be interpreted in more than one rational way, the Court is required to uphold the ALJ's rational interpretation. *Stiffler v. O'Malley,* 102 F.4th 1102, 1106 (9th Cir. 2024); *Ford v. Saul,* at 1154.

As for activities of daily living, the ALJ's decision is not supported by substantial evidence. Unlike the recent case decided by the Ninth Circuit Court of Appeals, *Stiffler v. O'Malley,* 102 F.4th 1102, 1107-08 (9th Cir. 2024), where the ALJ properly rejected a physician's opinion by citing specific activities documented in the medical treatment records – such as crafts, writing poetry, attending youth groups – in this case, the ALJ provided no such analysis. With respect to Dr. Wheeler's opinions, and Dr. Morgan's opinion, the ALJ simply mentions, in a general way, that the mental health opinions were inconsistent with plaintiff's ability to do simple chores, use dating apps, socialize with friends and family, and help care for her significant other. AR 47-49. The ALJ does

7

not give reasoning as to why these activities would be inconsistent with the symptoms and limitations assessed by Dr. Wheeler or Dr. Morgan. Therefore, it was error for the ALJ to discount the opinions of Dr. Wheeler and Dr. Morgan on this basis. *See Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014) (record did not show an inconsistency between medical opinion and plaintiff's daily activities, therefore the ALJ's determination that the medical opinion should be discounted was unsupported by the record).

When analyzing whether an error is harmless, the Court must consider whether the error was consequential to the resulting decision that plaintiff did not meet the criteria for disability benefits. *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006) (an error would be considered harmless only if the Court concludes the error was irrelevant to the nondisability finding). Here, the ALJ made several errors in reviewing the medical opinions of these clinical psychologists. Among those errors is a failure to explain how Washington DSHS severity ratings and the definition of disability used by DSHS would mean the clinical psychologists' opinions are unreliable. The Court cannot conclude these are harmless errors; erroneously discounting three medical opinions from two consulting physicians would potentially affect the RFC, and the agency's reasoning cannot be discerned, even though arguably one reason is supported. *Brown-Hunter v. Colvin,* 806 F.3d at 492-495.

**2. Whether the ALJ erred at step five**

Plaintiff contends the ALJ failed to resolve an apparent conflict between the V.E.'s testimony and the DOT because each of the occupations identified by the ALJ "seem to have a production pace." Dkt. 5, at 10.

Before relying on evidence presented by the V.E., the ALJ is required to ask the V.E. if there is any possible conflict between the testimony of the V.E. and the Dictionary of Occupational Titles ("DOT"). *Massachi v. Astrue,* 486 F.3d 1149, 1152 (9th Cir. 1999). First, the ALJ must determine whether a conflict exists and if it does, then the ALJ must determine: (1) is the V.E.'s explanation for the conflict reasonable, and (2) is there a basis for relying on the V.E. instead of the DOT. *Id.* at 1153.

For the evidence presented by the V.E. to be characterized as being in conflict with the DOT, any difference must be "obvious or apparent [and] at odds with the [DOT]'s listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin,* 844 F.3d 804, 808 (9th Cir. 2016).

In this case, the ALJ asked the V.E. about production pace and found that plaintiff would not be able to perform past work because of the production pace of that previous work. AR 231. The ALJ included a limitation in the RFC that plaintiff would not be able to perform the requirements of an occupation that required a production pace rate of work. AR 38.

The parties have not pointed to any definition of "production pace" in the DOT or in the SSA regulations. Plaintiff has not established that the three occupations identified by the V.E. have essential, integral, expected, or obvious, work requirements that would demand production pace. Where the frequency or necessity of a task is unlikely and

unforeseeable – as with cashiers possibly having to reach overhead in the *Gutierrez* case – there is no obligation to inquire. Therefore, in this case, because production pace is not an obvious or apparent conflict to resolve, the ALJ did not err by not inquiring about that aspect of the occupations identified at step five.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ's committed harmful error in the decision to discount the medical evidence provided by Dr. Wheeler and Dr. Morgan. The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo v. Berryhill*, 871 F.3d 664, 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

Here, the ALJ must re-evaluate the opinions of Dr. Wheeler and Dr. Morgan and potentially take additional evidence. If the ALJ relies on a difference between Washington DSHS regulations, severity ratings, or criteria for disability as a reason for discounting Dr. Wheeler's or Dr. Morgan's opinions, the ALJ must explain their reasoning. If the ALJ relies on plaintiff's activities of daily living as a reason for discounting the opinions of these clinical psychologists, the ALJ is required to explain how those activities are inconsistent with the limitations opined by these experts.

Therefore, there are outstanding issues which must be resolved and remand for further administrative proceedings is the appropriate remedy.

Therefore, the Commissioner's decision is reversed and remanded for additional proceedings.

Dated this 27th day of June, 2025.

Theresa L. Fricke
United States Magistrate Judge